IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| THE CLAUDE WORTHINGTON | ) |
| BENEDUM FOUNDATION, | ) |
| | ) 2:19-cv-132-NR |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| THE BANK OF NEW YORK | ) |
| MELLON CORPORATION, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OPINION

**J. Nicholas Ranjan, United States District Judge**

In its two-count Amended Complaint [ECF 14], The Claude Worthington Benedum Foundation ("Benedum") alleges that The Bank of New York Mellon Corporation ("BNY Mellon") breached its fiduciary duty and committed fraud by failing to provide Benedum with "best pricing" and by making materially false statements about its "true pricing structure." BNY Mellon moved to dismiss the Amended Complaint in its entirety, asserting that it did not have to provide "best pricing" and that any fraud claim is barred by the terms of a settlement agreement between the parties.

For the reasons below, BNY Mellon's Motion will be **GRANTED**. To the extent Count I for breach of fiduciary duty is based on BNY Mellon's alleged false statements and concealment about the fees it would charge to Benedum, it is dismissed without prejudice. All other claims in the Amended Complaint are dismissed with prejudice.

I. BACKGROUND

Benedum entered into a Custodian Agreement with BNY Mellon's predecessor, Mellon Bank, N.A. ("Mellon Bank"), on July 18, 1977, in which Benedum appointed Mellon Bank as its "attorney-in-fact." [ECF 14, at ¶¶ 20-21]. The Custodian Agreement provides that Mellon Bank, as custodian, would hold certain property of Benedum and "shall invest, sell and reinvest only upon [Benedum's] directions." [ECF 14-1]. Later, in May 1993, Benedum entered

into a Trust Agreement with Mellon Bank, which made Mellon Bank Benedum's trustee. [ECF 14, at ¶ 22].

In 2004, Benedum placed $2 million in the Mellon HBV Offshore Multi-Strategy Fund Ltd. (the "Fund"). [*Id.* at ¶¶ 29, 35]. Benedum alleges that BNY Mellon learned the Fund was illiquid and troubled in 2007 but did not disclose that fact to Benedum. [*Id.* at ¶¶ 45-54].

In 2008, the Fund collapsed and Benedum lost its entire investment. [*Id.* at ¶ 55]. In June 2010, Benedum made a demand against BNY Mellon for the value of its lost investment. [*Id.* at ¶ 62]. In making that demand, Benedum claimed that BNY Mellon "misled" it "about its knowledge of the situation, minimizing its own involvement when it had greater complicity that was later discovered." [*Id.* at ¶ 66].

Benedum and BNY Mellon ultimately resolved their dispute through a negotiated Settlement Agreement. The Settlement Agreement was signed by Benedum and BNY Mellon's subsidiary, The Bank of New York Mellon. [ECF 23-1]. Benedum alleges that BNY Mellon and The Bank of New York Mellon were an "integrated enterprise" and, therefore, BNY Mellon has alter-ego liability for The Bank of New York Mellon's actions. [ECF 14, at ¶¶ 14-19].

Among other things, the Settlement Agreement included: (1) a confidential payment to Benedum; and (2) a reduction in the custodial fees charged by BNY Mellon on Benedum's assets. [*Id.* at ¶¶ 70-71, 73, 76]. Of the two, the larger was "the reduction in custodial fees," which allegedly represented roughly "$500,000 in savings" to Benedum. [*Id.* at ¶ 73]. In exchange, Benedum agreed to release its claim related to the investment and continue its custodial relationship with BNY Mellon for another seven years. [*Id.* at ¶ 74].

Benedum alleges that in March 2018, it learned "for the first time that BNY Mellon was charging half the rate to other customers (.75 basis points compared to 1.5 basis points) yet had not [been] passing along those lower fees to [Benedum] despite BNY Mellon being [Benedum's] fiduciary and attorney-in-fact and also having entered into the Settlement Agreement." [*Id.* at ¶¶ 90-91]. In other words, Benedum alleges BNY Mellon had been charging lower custodial fees to other customers "for at least five years" but were not providing them to Benedum and did not inform Benedum of their availability. [*Id.* at ¶ 92]. Benedum also alleges BNY Mellon did not advise that the rates being charged to it before the reduction as part of the 2011 settlement were higher

than those charged to other customers, and Benedum "believed" that BNY Mellon was providing it the best available pricing. [*Id.* at ¶¶ 84-85].

According to Benedum, BNY Mellon had a "duty to disclose the true pricing, not only because it was the fiduciary of the Foundation, but also because of the affirmative representations made pertaining to the Settlement Agreement." [*Id.* at ¶ 89]. Benedum believes that "for at least a five-year period, [it] was overcharged approximately $26,500 a year, estimated at a minimum of $131,000." [*Id.* at ¶ 108].

## II. LEGAL STANDARD

To survive a motion to dismiss, a complaint must provide more than labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

"Factual allegations must be enough to raise a right to relief above the speculative level" and "sufficient to state a claim for relief that is plausible on its face." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal marks and citations omitted).

## III. DISCUSSION & ANALYSIS

### A. Benedum's Fiduciary Duty Claim, as Currently Pleaded, Fails.

Benedum asserts that, as its fiduciary, BNY Mellon "had a duty to disclose to [Benedum] all relevant information." [ECF 26, at 8]. Benedum alleges BNY Mellon did not meet that duty in two ways: (1) by "failing to provide [Benedum] with best pricing"; and (2) by "making materially false statements to [Benedum] about the pricing structure, and fee 'savings' from a 'reduced' fee structure" and "conceal[ing] its true pricing structure" in negotiating the Settlement Agreement. [ECF 14, at ¶ 106(a)-(o)].

BNY Mellon argues that it was not required "to charge [Benedum] with the lowest pricing possible." [ECF 23, at 7]. BNY Mellon further argues that

any claims based on "facts regarding the Fund and Defendants' alleged involvement in or knowledge of its collapse" were "explicitly released by the Settlement Agreement." [*Id. at* 12].

The Court agrees that any fiduciary duty claim based on the failure to provide "best pricing" fails as a matter of law. On the other hand, Benedum's claim that BNY Mellon made materially false statements about the fees it would charge could conceivably state a claim. But Benedum has not satisfied the pleading standard for this claim, so the Court will grant it leave to amend to correct its deficiencies.

1. **Benedum's Claim that BNY Mellon Breached Its Fiduciary Duty by Not Providing "Best Pricing" Fails as a Matter of Law.**

The Court agrees with BNY Mellon that the scope of its fiduciary duty does not include a requirement to provide the "best possible pricing" for its services. As BNY Mellon points out, "[i]t is well settled that where there is a valid agreement between settlor and trustee fixing the terms of the trustee's compensation, courts must ordinarily enforce the terms of the agreement without making an independent determination of whether the terms are reasonable." [ECF 23, at 7] (quoting *In re Duncan Tr.*, 391 A.2d 1051, 1055 (Pa. 1978)). "The parties agreed to a specific fee schedule, which was set forth as an exhibit to the Settlement Agreement. Accordingly, BNY Mellon was entitled to payment of those fees, regardless of what other customers may have been charged at that time." [ECF 23, at 7].

This approach tracks how fee negotiations are treated in the analogous attorney-client fiduciary setting.

That is, in the attorney-client setting, attorneys will often negotiate with clients over their rates. Even though the lawyer is a fiduciary, the law does not impose a requirement that the lawyer tell or charge the client his lowest rates. *See, e.g.*, *United States v. Weimert*, 819 F.3d 351, 369 (7th Cir. 2016) ("Thus, while an attorney's fiduciary duty is broad, the law does not require an attorney negotiating with a client over a fee to disclose the lowest fee the attorney would be willing to accept. That remains a matter for negotiation without a duty of complete disclosure of the attorney's negotiating position.").

The investment manager-investor relationship is no different. There was no independent obligation on BNY Mellon to disclose or charge its lowest

price to Benedum.  The parties, though in a fiduciary relationship, were free to set the terms of their arrangement by contract.

Benedum's reliance on *Matter of Estate of Evasew*, 584 A.2d 910 (Pa. 1990) does not alter this conclusion.  [ECF 26, at 7-8].  In *Evasew*, the transaction at issue was not the fee agreement.  584 A.2d at 913.  Fee contracts involving a fiduciary are not in the category of "business transactions" that are subject to the kinds of additional disclosure requirements and heightened scrutiny described in *Evasew*.[1]  *See Sears, Roebuck & Co. v. Goldstone & Sudalter*, 128 F.3d 10, 17 (1st Cir. 1997) ("Business transactions other than fee agreements between lawyers and clients create special conflicts of interest that require the precaution of independent advice.  However, attorneys, like fiduciaries generally, are entitled to receive compensation for their services, and may pursue their legitimate interests in receiving payment in the ordinary fashion.").

While Benedum concedes that "fiduciaries 'are entitled to fair and just compensation'" [ECF 26, at 8 n.2], the best way to arrive at fair and just compensation is to do exactly what Benedum alleges the parties did here: engage in an arm's-length negotiation assisted by counsel.  During that negotiation, Benedum had an opportunity to try to obtain an agreement for even lower custodial fees.  It did not do so.  Instead, Benedum explicitly agreed to the specific fees at the heart of this case.  [ECF 23-1].

There are myriad reasons why BNY Mellon might have different rate structures for different clients.  Each client has different needs and investment goals.  As a result, the "size, age, or complication of an investment" will vary and could create the need for higher or lower rates.  [ECF 27, at 2].  Requiring BNY Mellon to charge one uniform rate to all customers ignores that reality and would compromise BNY Mellon's ability to obtain fair compensation for its services.

---

[1]     That the fiduciary relationship between BNY Mellon and Benedum already existed at the time the parties negotiated the Settlement Agreement does not materially impact the analysis.  At that point, the parties were acting as adversaries and represented by separate counsel.  The focus of this lawsuit is on the fee agreement struck between the parties, which was negotiated at arm's length.  This kind of transaction falls outside the scope of any fiduciary obligations.

Moreover, adopting the *per se* rule suggested by Benedum that fiduciaries must provide "best pricing" would substantially enlarge the scope of a fiduciary's duties and upend all existing and prospective contracts in Pennsylvania involving a fiduciary. Indeed, if the Court were to accept Benedum's position, Benedum's own lawyer would then have an affirmative duty to immediately disclose whether he is charging the lowest acceptable rate for his services. The same goes for BNY Mellon and its Pennsylvania beneficiaries. The Court declines to adopt such a broad and unsupported expansion of fiduciary duties under Pennsylvania law.

Accordingly, to the extent Count I is based on the allegation that BNY Mellon failed to provide "best pricing" or disclose its "best pricing" to Benedum, it is dismissed with prejudice.

### 2. Benedum's Fiduciary Duty Claim Based on BNY Mellon's False Statements Regarding Its Fee Structure Is Not Pleaded with Particularity.

Although there was no requirement that BNY Mellon disclose or charge Benedum its lowest price, there was a requirement that BNY Mellon not make materially false statements to Benedum when it negotiated the fee agreement. The other alleged basis for Benedum's fiduciary duty claim is just that— Benedum claims that BNY Mellon made "materially false statements to [Benedum] about the pricing structure, and fee 'savings' from a 'reduced' fee structure" and "concealed its true pricing structure" while negotiating the Settlement Agreement. [ECF 14, at ¶ 106(i), (j)].

Misrepresentations and omissions of material fact can serve as the basis for a breach of fiduciary duty claim. *See Bancroft Life & Cas., ICC, Ltd. v. Lo*, 978 F. Supp. 2d 500, 518 (W.D. Pa. 2013); *Wurtzel v. Park Towne Place Apartments Ltd. P'ship*, 62 Pa. D. & C.4th 330, 345 (Pa. Ct. Com. Pl. 2001). That kind of breach of fiduciary duty claim, however, must meet the "heightened specificity requirements of Rule 9(b)" to survive a motion to dismiss because it sounds in fraud. *Dolan v. PHL Variable Ins. Co.*, No. 15-1987, 2016 WL 6879622, at *8 (M.D. Pa. Nov. 22, 2016); *see also Buckley v. O'Hanlon*, No. 04-955, 2007 WL 956947, at *5 (D. Del. Mar. 28, 2007) ("Defendant Roberts argues that breach of fiduciary duty claims must satisfy the particularity requirements of Federal Rule of Civil Procedure 9(b). Such an assertion is correct when the allegations of breach of fiduciary duty sound in fraud."); *Henneberry v. Sumitomo Corp. of America*, 532 F. Supp. 2d 523, 555 (S.D.N.Y. July 12, 2007) ("Rule 9(b)'s heightened pleading standards apply

to breach of fiduciary duty claims where the breach is premised on the defendant's fraudulent conduct,...such as an attempt 'to induce action or inaction on the part of the investors by means of falsehoods or material omissions.'").

The Amended Complaint does not currently meet the heightened pleading standard of Rule 9(b). As the Third Circuit has explained, "[t]o satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Federico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (citation omitted). In other words, a plaintiff must provide "all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002) (internal marks and citation omitted).

Fundamental pieces of Benedum's story are missing from the Amended Complaint. For example, as currently pleaded, it is unclear what precisely Benedum is alleging that BNY Mellon said about its pricing structure. Did BNY Mellon promise Benedum that it was providing it with the lowest rates it would charge any of its customers? If so, what was said, who said it, when was it said, and to whom was it said? Without answers to these questions, BNY Mellon does not have notice of the "precise misconduct with which [it is] charged." *Lum v. Bank of America*, 361 F.3d 217, 223-24 (3d Cir. 2004).

The Court knows that Benedum has already amended its pleading once. However, Federal Rule of Civil Procedure 15(a)(2) states that "the court should freely give leave [to amend] when justice so requires." The Court will grant Benedum one more opportunity to satisfy its pleading burden with respect to the narrow breach of fiduciary duty claim outlined in this section, if it so chooses. Therefore, to the extent that Count I is based on a claim that BNY Mellon made false statements or concealed material facts from Benedum, it is dismissed without prejudice. Benedum will have 21 days to file a Second Amended Complaint.[2]

---

[2] Because the Court is granting Benedum an opportunity to replead, it is premature for the Court to decide whether that potential claim will be covered by the release in the Settlement Agreement or barred by the applicable statute of limitations.

## B. Benedum's Fraud Claim in Count II Is Barred by the Parol Evidence Rule.

Benedum alleges that BNY Mellon committed fraud by misrepresenting that "best pricing was being provided in connection with a Settlement Agreement to release other wrongdoing perpetrated by BNY Mellon." [ECF 14, at ¶ 122]. Benedum labels this as "fraud in the execution." [*Id.* at ¶ 123]. Contrary to this label, however, Benedum's claim is for fraudulent inducement. *See Jarbough v. Attorney General of U.S.*, 483 F.3d 184, 189 (3d Cir. 2007) ("We are not bound by the label attached by a party to characterize a claim and will look beyond the label to analyze the substance of a claim. To do otherwise would elevate form over substance and would put a premium on artful labeling.").

"Fraud in the inducement is found where an opposing party made false representations that induced the complaining party to agree to the contract." *Schnell v. Bank of New York Mellon*, 828 F. Supp. 2d 798, 804-05 (E.D. Pa. 2011). Fraud in the execution occurs when the "parties agreed that certain terms would be included in the written contract, and that the terms were omitted by fraud, accident or mistake." *Nat'l Educ. Fin. Servs., Inc. v. U.S. Bank, Nat'l Ass'n*, No. 12-6651, 2013 WL 6228979, at *8 (E.D. Pa. Dec. 2, 2013).

"The distinction between fraud in the inducement and fraud in the execution is that, the former induces a party to assent to something he otherwise would not have; the latter induces a party to believe the nature of his act is something entirely different than it actually is." *Connors v. Fawn Mining Corp.*, 30 F.3d 483, 490 (3d Cir. 1994). Put differently, "fraud in the execution occurs when deception causes a document to say something different than a party believes it to say." *Nat'l Educ.*, 2013 WL 6228979, at *8. "Accordingly, to prove fraud in the execution, a plaintiff must allege that the parties agreed that certain terms would be included in the written contract, and that the terms were omitted by fraud, accident or mistake." *Id.* (citing *1726 Cherry St. P'Ship v. Bell Atl. Props., Inc.*, 653 A.2d 663, 666 (Pa. Super. Ct. 1995)).

That is not what Benedum has alleged. Benedum is claiming that BNY Mellon "did not truthfully provide best pricing, but instead deceived and mislead [sic] [Benedum] about the pricing that was being provided" in the Settlement Agreement. [ECF 14, at ¶ 123]. Thus, Benedum does not allege that the pricing term is missing; Benedum alleges that it believed the pricing

term represented something that it did not (*i.e.*, "best pricing") based on BNY Mellon's characterizations. Based on that misplaced belief, Benedum entered into the Settlement Agreement. That is fraudulent inducement.

This is an important distinction because claims of fraudulent inducement fail where, as here, there is an integration clause in the operative agreement. "Pennsylvania law prohibits recovery on a claim of fraud in the inducement where the contract represents a fully integrated written agreement." *Morales v. Superior Living Prods., LLC*, No. 07-4419, 2009 WL 3234434, at *7-8 (E.D. Pa. Sept. 30, 2009), *aff'd*, 398 F. App'x 812 (3d Cir. 2010). The reason being that "if the parties to a contract reduce their agreement to writing, and the writing is determined to represent their 'entire contract,' the parol evidence rule bars the use of 'evidence of any previous oral or written negotiations or agreements involving the same subject matter as the [writing] …. To explain or vary the terms of the [writing].'" *Techinomics, Inc. v. Forest Power & Energy Holding, Inc.*, No. 16-1859, 2017 WL 2536969, at *3 (W.D. Pa. May 11, 2017) (quoting *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 436 (Pa. 2004)).

For the parol evidence rule to apply in a case involving a fraudulent inducement claim, the court must decide that "(1) the written agreement 'contains terms which directly deal with the subject matter of the alleged oral representation, and (2) represents the entire contract between the parties.'" *Palermo Gelato, LLC v. Pino Gelato, Inc.*, No. 12-931, 2013 WL 3147312, at *4 (W.D. Pa. June 19, 2013) (quoting *Atl. Pier Assocs., LLC v. Boardakan Rest. Partners*, 647 F. Supp. 2d 474, 486 (E.D. Pa. 2009)).

The "same subject matter" prong is satisfied because the Fee Schedule in the Settlement Agreement clearly sets forth terms that directly address the pricing that BNY Mellon would charge Benedum.

The Settlement Agreement also represents the "entire contract" between the parties. "The presence of an integration clause stating that the parties' writing represents their entire agreement is 'a clear sign' that the writing is fully integrated." *Techinomics*, 2017 WL 2536969, at *4 (citing *Yocca*, 854 A.2d at 436). Here, the Settlement Agreement contained the following integration clause:

> **Entire Agreement**. This Agreement and the Fee Schedule represent the full and complete agreement of the Parties with respect to the Claim, and supersede and replace any prior

agreements relating thereto, whether oral or written. Any amendment or modification of the Agreement must be in writing and executed by all Parties in order to be effective. ***There are no representations, warranties, promises, covenants or understandings relating to settlement of the Claim other than those expressly set forth in the Agreement and in the Fee Schedule.*** For the avoidance of doubt, the Custodian Agreement date[d] July 18, 1977 and the Trust Agreement dated May 1, 1993 executed by Benedum and Mellon Bank, N.A. shall remain in full force and effect.

[ECF 23-1, at ¶ 7] (emphasis added). The "entire contract" prong is satisfied by this clause. *See Palermo Gelato*, 2013 WL 3147312, at *6.

As a result, any claim that Benedum was "fraudulently induced into signing the [Settlement Agreement] is barred by the parol evidence rule, and the Court cannot consider it." *Winters v. Inv. Sav. Plan for Emps. of Knight-Ridder, Inc.*, 174 F. Supp. 2d 259, 263 (E.D. Pa. 2001) (applying parol evidence rule and dismissing plaintiff's claim she was fraudulently induced into signing settlement agreement because she did not believe it would cover certain claims when she signed it), *aff'd sub nom. Winters v. Kutrip*, 47 F. App'x 143 (3d Cir. 2002).[3] Count II of the Amended Complaint is dismissed with prejudice.[4]

---

[3] The integration clause bars Benedum's fraud claim. It is unclear whether the integration clause would also bar Benedum's fiduciary duty claim that sounds in fraud (should Benedum choose to re-plead that claim). Because the parties have not briefed this issue, the Court will not address it.

[4] Because the Court is dismissing Benedum's substantive claims, it need not resolve the parties' arguments about *alter ego* liability or the potential availability of punitive damages at this time.

## IV. CONCLUSION

For all the reasons discussed above, Defendant's Motion to Dismiss [ECF 22] will be **GRANTED**. An appropriate Order follows.

DATED this 26th day of November, 2019.

BY THE COURT:

*/s/ J. Nicholas Ranjan*
United States District Judge